## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| **Plaintiff,** | : |
| **v.** | : |
| **One 2007 Harley Davidson Street Glide** | :       Civil No.  AW-13-1697 |
| **Motorcycle VIN # 1HD1KB4197Y722798,** | |
| **et al.,** | : |
| **Defendants.** | : |

: : : : : : :

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

Comes now the Plaintiff, the United States of America, in response to the Motion to Dismiss filed by the claimants, Robert and Karen Grieninger.  The Plaintiff requests the Court to deny the claimants' motion for the following reasons:

I.    FACTS

1.    On July 27, 2012, detectives from the Charles County Sheriff's Office, assisted by the Drug Enforcement Administration ("DEA"), executed a search and seizure warrant at Scooter's Garage, a business managed by Robert Scott Grieninger located at 5130 Hawthorne Road, La Plata, Maryland.  Detectives seized, among other things, one 2007 Harley Davidson Street Glide Motorcycle, VIN # 1HD1KB4197Y722798, and $3,364.00 in United States currency.  On July 31, 2012, detectives executed a search and seizure warrant against two PNC Bank accounts, one held in the name of Robert Scott Grieninger and Karen Elaine Clement (aka Karen Grieninger) containing $10,371.41, and one held in the name of Robert Scott Grieninger

containing $15,077.18.  *See* ECF No. 1.  The seized motorcycle, cash, and funds from the two

PNC bank accounts are hereafter referred to as the "Defendant Properties."

2.      On September 25, 2012, the DEA began an administrative forfeiture action

against the Defendant Properties pursuant to 21 U.S.C. § 881, 18 U.S.C. § 983, and 19 U.S.C. §§

1601 through 1619 by sending notice of its intent to forfeit the Defendant Properties to the

claimants, among others.

3.      On or about October 31, 2012, the DEA received letters and documents from

claimants' counsel seeking "remission/mitigation" or serving as "claims contesting the

forfeiture" of the Defendant Properties, among others.  *See* Exhibit A.

4.      On November 27, 2012, the DEA issued a letter to claimants' counsel explaining

that it was unsure whether the claimants intended to file a claim, a petition for remission, or both.

The DEA sought clarification of the matter and requested the claimants to cure the deficiencies

and file a claim within 20 days of receipt, or file a petition for remission or mitigation of

forfeiture within 30 days of receipt of its letter.  *See* Exhibit B.

5.      On December 13, 2012, the DEA received letters and documents from claimants'

counsel clarifying that claimants had intended to file both claims and petitions for remission or

mitigation of forfeiture.  *See* Exhibit C.

6.      Thereafter, on or about December 31, 2012, the DEA referred the matter to the

United States Attorney's Office requesting initiation of judicial forfeiture proceedings against the

Defendant Properties, among others.  The referral indicated that a valid claim was filed with the

DEA on December 13, 2012.  *See* Exhibit D.

7.      On February 19, 2013, counsel for the claimants and counsel for the government

agreed to extend the government's deadline for commencing a judicial forfeiture action against

the Defendant Properties from the March 13, 2013, deadline by an additional 90-days, to June 11, 2013, to allow for a possible resolution of the forfeiture issues in the related state proceedings in the Circuit Court for Charles County.  *See* ECF No. 6-2.

8.      Counsel for the government prepared, dated, and signed the civil forfeiture complaint against the Defendant Properties on June 11, 2013.  *See* ECF No. 1.

9.      Government support staff placed the signed complaint in the office's outgoing mailbox designated for the runner to the United States District Courthouse.  The United States Attorney's Office has two daily runs to the District Court for filings and other mailings, one in the morning and one in the afternoon.  The support staff personnel believed that the complaint was placed in the outgoing box in time for the office runner's afternoon run to the Court.

10.     Based on the time stamp on the filed complaint, it appears that the complaint was sent to the Court on the office runner's morning run on the next day, June 12, 2013.  It is unclear whether the government's complaint was not included in the runner's afternoon run on July 11 because the runner left a few minutes earlier than normal, or whether the office support staff personnel placed the complaint in the outgoing box a few minutes late.

11.     The Court docketed the government's civil forfeiture complaint against the Defendant Properties on June 12, 2013.  *See* ECF No. 12.

12.     The claimants, Robert and Karen Grieninger, filed timely verified claims to the Defendant Properties on July 12, 2013.  *See* ECF Nos. 4 and 5.

13.     The claimants filed a Motion to Dismiss on July 30, 2013.  *See* ECF No. 6.

II.    ARGUMENT

Section 983 of Title 18 of the United States Code, enacted as part of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") sets out the general rules for civil forfeiture

proceedings.  Generally, under 18 U.S.C. § 983(a)(3)(A), the government must file a civil forfeiture complaint not later than 90-days after a claim has been filed in a matter that begins as an administrative forfeiture proceeding.  If the government does not file a civil forfeiture complaint before the time for filing the complaint has expired, then the government must release the property and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense.  *See* 18 U.S.C. § 983(a)(3)(B).  However, the 90-day filing deadline may be extended for good cause by the court, or by agreement of the parties.  *See* 18 U.S.C. § 983(a)(3)(A).

In this case, there is no factual dispute as to when the filing deadlines expired.  The parties agree that the government's original filing deadline was March 13, 2013, and that by agreement the parties extended the government's filing deadline an additional 90-days to June 11, 2013.  Moreover, the government concedes that its civil forfeiture complaint was filed and docketed with the Court on June 12, 2013.  The government's complaint appears to have been delivered to the Court by the United States Attorney's Office's court runner as part of the office's morning delivery run, mere hours after the expiration of the agreed upon extended CAFRA deadline.  The government's complaint was completed by the filing deadline, but the late delivery appears to be the result of a mistake or misunderstanding regarding the office's daily mailing procedures.  Thus, the government now requests the Court to extend for good cause the government's filing deadline, by one day only, where the government's delay was the result of a mistake, the complaint was filed late by mere hours, the consequences of dismissal are so harsh, and the claimants have suffered no prejudice, so that this case may be resolved on the merits and not by a technical default.

4

Some courts have required strict compliance with the 90-day civil forfeiture filing deadline. *See United States v. $80,891.25 in U.S. Currency*, 2011 WL 6400420 (S.D. Ga. Dec. 19, 2011) (granting motion to dismiss where the government's complaint was filed two days after the 90-day deadline); *United States v. Funds in the Amount of $314,900.00*, 2006 WL 794733 (N.D. Ill. Mar. 21, 2006) (granting claimant's motion to dismiss where the government's complaint was filed 91-days after receiving claim). However, these two cases, for example, are distinguishable because there was a dispute regarding when the 90-day deadline actually expired.

In *Funds in the Amount of $314,000.00*, the parties disputed the meaning of "receipt" that triggers the 90-day period because of ambiguities in the government's written notice to the claimant. The court, construing the ambiguous language of the notice against the government because the government had drafted the notice, held that the earlier date qualified as "receipt," thus leading to the conclusion that the government's complaint was filed one day late. *Id.* at *2. The court refused to grant the government's request for a "good cause" extension on the grounds that both the claimant and the government are held to strict compliance with the statutory deadlines of 18 U.S.C. § 983, notwithstanding the plain language of the statute that the court may extend the deadline for good cause. *Id.* at *1.

In *$80,891.25 in U.S. Currency*, the dispute over when the government received the claim arose because the government cited in its complaint a receipt date indicating that the complaint had been filed 92-days after receipt of the claim. In response to the claimant's motion to dismiss, the government argued that it had received the claim two days later than the date it had originally cited in its complaint. The court held that the government was bound by the admissions in its pleadings and granted the claimant's motion to dismiss. 2011 WL 6400420 at *1. The court further suggested that strict compliance against the government is justified

5

because of the "law's presumption against forfeiture." *Id.* at *2. The government will take this opportunity to point out that the notion that "forfeitures are not favored by the law" is elegantly challenged by Judge Wilkinson of the Fourth Circuit, who observed:

> "Acts of Congress are not "disfavored." Congress authorized forfeiture for what it thought were good and sufficient reasons: that the threat of imprisonment was not sufficient to curb the drug trade and that seizure of the economic power base of criminal organizations and enterprises was necessary to effective enforcement of the drug laws. *See* S. Rep. No. 225, 98th Cong., 2d Sess. 191, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3374. Given this judgment by Congress, it is inappropriate for the courts to subvert the operation of the forfeiture action by imposing greater procedural or constitutional burdens on the government in forfeiture than in other cases."

*United States v. Borromeo*, 945 F.2d 750, 755-56 (4th Cir. 1991) (concurring).

Instead, the government believes that *United States v. $39,480.00 in U.S. Currency* is more analogous and instructive as an equitable resolution to a situation such as this where the government missed the civil forfeiture filing deadline by one day due to a clerical or administrative error. 190 F. Supp. 2d 929 (W.D. Tex. 2002). In *$39,480.00 in U.S. Currency*, the government based its calculation of the 90-day deadline on a copy of the claim with an incorrect date stamp. After the claimant filed a motion to dismiss, the government discovered another copy of the claim with the correct date stamp showing that the government had received the claim one day earlier than it had originally believed, and thereby demonstrating that the government's complaint was filed one day late. *Id.* at 931. The court, accepting that forfeiture statutes are strictly construed, nevertheless held that tolling the 90-day deadline is appropriate and denied the claimant's motion to dismiss. The court noted that the government acted diligently and with good faith, and if the government had known about the erroneous date, it could have requested additional time to file the complaint. *Id.* at 932. In this case, the

government acted diligently and with good faith in prosecuting the case in accordance with the deadline that had been extended by agreement for legitimate reasons.  Moreover, the government could not have known or anticipated that an administrative error in its court document delivery procedures would result in the complaint being filed the following morning, after the expiration of the filing deadline, and thus it could not have requested additional time to file the complaint. The government made every effort to comply and was clearly not attempting to frustrate the purpose of the statutory deadline by holding the Defendant Properties for an extended period without commencing forfeiture proceedings.

Finally, a one-day delay does not prejudice the claimants.  The addition of one day to the Plaintiff's filing deadline is so inconsequential that it could not significantly exacerbate any hardship or difficulty to the claimants caused by the seizure of the Defendant Properties, particularly where the claimants had already agreed to extend the government's filing deadline 90-days beyond the original deadline.  Moreover, an additional day does not compromise the merits of the claimants' claims in any respect.  The claimants will have an opportunity to present evidence to the government that may lead to an agreeable settlement for all parties, or they will have their day in court should a trial become necessary.  *See Id.* at 932-33.

On the other hand, dismissal of the Plaintiff's complaint would have a draconian effect on the government's case.  Granting the claimants' Motion to Dismiss would force the government to release the Defendant Properties and bar them from any further action to effect civil forfeiture of those properties.  This harsh result would be inequitable in light of the government's good faith attempt to comply with section 983 and the minimal delay caused by its unintentional non-compliance.  Rather than determining the outcome of this case on solely technical or procedural grounds, particularly where the government's one-day delay was

unintentional and insignificant, the Court should deny the claimants' Motion to Dismiss, thereby allowing for a resolution of any dispute on the merits of the case.  *See Id.* at 933.

III.    <u>CONCLUSION</u>

     For the above stated reasons, the Plaintiff requests that the Court deny the claimants' Motion to Dismiss and equitably toll the Plaintiff's deadline to file a civil forfeiture complaint by one day so the complaint is deemed timely filed.


Dated: August 16, 2013

                               Respectfully submitted,

                               Rod J. Rosenstein
                               UNITED STATES ATTORNEY
                               District of Maryland


                               _____/s/_____
                               Stefan D. Cassella
                               Assistant United States Attorney
                               36 South Charles Street
                               Fourth Floor
                               Baltimore, Maryland 21201
                               Tel: (410)-209-4800