IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

       v.

ONE 2007 HARLEY DAVIDSON
STREET GLIDE MOTORCYCLE
VIN 1HD1KB4197Y722798 et al.,

   Defendants.

Civil Action No. 8:13-cv-01697-AW

## MEMORANDUM OPINION

This is a civil forfeiture action. Pending before the Court is Claimants' Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS** Claimants' Motion to Dismiss.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 27, 2012, state and federal agents executed a search and seizure warrant at a garage apparently named Scooter's Automotive & Repair or Scooter's Place Towing and Service ("Scooter's"). Scooter's is located at 5130 Hawthorne Road, La Plata, Maryland 20646. According to the United States, Claimant Robert Scott Grieninger ("Grieninger") managed Scooter's. The agents discovered loaded guns, drug paraphernalia, cocaine in leather vest, and $3,364.00 cash in a toolbox. On the same day, detectives executed a search and seizure warrant at Grieninger's residence, which is located at 6000 Winters Place, La Plata, Maryland 20646.

1

There, detectives discovered a loaded pistol and a small ziplock bag of "suspected cocaine." Doc. No. 1 at 6.

On July 31, 2012, detectives executed a search and seizure warrant authorizing the seizure of bank records and funds from Grieninger's accounts with PNC Bank in La Plata, Maryland ("PNC"). On August 29, 2012, detectives received documents pertaining to two PNC bank accounts. The first account, PNC 5570194743 ("Account 1"), was in the name of both Grieninger and Karen Elaine Clement.[1] Account 1 held $10,371.41. The second account, PNC 5570736901 ("Account 2"), was in Grieninger's name only and held $15,077.18. The detectives seized the funds from both accounts as drug proceeds.

Grieninger has been charged with various offenses as a result of the detectives' discoveries. The United States adds that Grieninger has reported no income.

On or around December 13, 2012, Claimants, through counsel, filed a claim contesting the forfeiture. *See* Doc. No. 8-3. The Parties agreed to extend the United States' deadline for commencing a judicial forfeiture action from March 13, 2013 to June 11, 2013. *See* Doc. No. 6-2.

The United States asserts that it finalized the instant Verified Complaint for Forfeiture (Complaint) on June 11, 2013 and submitted it to its office staff for filing on the same day. However, the United States did not file its Complaint until June 12, 2013, which came one day after the extended deadline. The United States concedes that its office runner did not take the Complaint to the Court for filing until June 12, 2013. *See* Doc. No. 8 at 3–4. The United States asserts that "support staff personnel believed that the complaint was placed in the outgoing box in time for the office runner's [July 11, 2013] afternoon run to the Court." *Id.* ¶ 9, at 3. The

---

[1] Apparently, Clement has since changed her last name to Grieninger. The Court refers to Robert Grieninger and Karen Grieninger collectively as "Claimants."

United States adds that "[i]t is unclear whether the government's complaint was not included in the runner's afternoon run on July 11 because the runner left a few minutes earlier than normal, or whether office support staff personnel placed the complaint in the outgoing box a few minutes late." *Id.* ¶10, at 3. The United States has not submitted affidavits to support these factual averments.

On July 30, 2013, Claimants filed a Motion to Dismiss. Doc. No. 6. Claimants assert that the Complaint is time-barred under applicable forfeiture law. The United States filed a Response on August 16, 2013. The United States essentially argues that it had good cause within the meaning of applicable forfeiture law for its failure to file the Complaint on time. Alternatively, the United States seems to ask the Court to equitably toll the deadline.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).[2]

## III.  LEGAL ANALYSIS

### A.  Whether the United States Has Shown Good Cause for Its Admitted Failure to File the Complaint on Time

Section 2(a) of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") sets forth the general rules for civil forfeiture proceedings. *See generally* CAFRA, Pub. L. 106–185, § 2(a), 114 Stat. 202 (codified at 18 U.S.C. § 983). Under CAFRA, "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure." 18 U.S.C. § 983(a)(2)(A). CAFRA further provides that, "[n]ot later than 90 days after a claim has been filed, the Government shall file a

---

[2] When treating motions to dismiss as motions for summary judgment, courts generally must give the nonmoving party a reasonable opportunity to present all material pertinent to the motion. *See* Fed. R. Civ. P. 12(d). As this Court has consistently held, this standard entails notice and a fair opportunity to contest the factual matter presented. *See, e.g.*, *Cheraghi v. MedImmune, LLC*, Civil Action No. 8:11–cv–01505(AW), 2011 WL 6047059, at *2–3 (D. Md. Dec. 5, 2011) (citation omitted). Here, the notice requirement is satisfied because the Parties attached exhibits to their memoranda, and hence, the United States knew that the Court might rely on material outside the Complaint. *See id.* at *2 (citation omitted). The overall fairness requirement is satisfied because the material facts are not in dispute and it is implausible that there is any discoverable information that would enable the United States to withstand Claimants' Motion to Dismiss. *See id.* at *3.

complaint for forfeiture . . . ." *Id.* § 983(a)(3)(A). If the Government fails to file a complaint for forfeiture within 90 days after the filing of a claim, "the Government shall promptly release the property . . . and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." *Id.* § 983(a)(3)(B). "[T]he time limit imposed on the government by § 983(a)(3) is mandatory . . . ." *United States v. Wilson*, 699 F.3d 789, 791 (4th Cir. 2012). The requirement that the Government release the seized property where it fails to file a timely complaint for forfeiture is the "sanction" that CAFRA imposes for such failure. *Id.* at 795–96. Consistent with these mandates, district courts have tended to construe CAFRA's 90-day deadline strictly. *See United States v. $80,891.25 in U.S. Currency*, No. 4:11–cv–183, 2011 WL 6400420, at *2 (S.D. Ga. Dec. 19, 2011) (citing *United States v. $38,000.00*, 816 F.2d 1538, 1547 (11th Cir. 1987)); *United States v. $1,437.00 U.S. Currency*, 242 F. Supp. 2d 193, 195 (W.D.N.Y. 2002) (citing *United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993)) ("Generally, strict compliance with the time periods of CAFRA . . . is required."); *United States v. Funds in the Amount of Three Hundred Fourteen Thousand Nine Hundred Dollars ($314,900.00)*, No. 05 C 3012, 2006 WL 794733, at *1 (N.D. Ill. Mar. 21, 2006) ("[T]he government [is] held to strict compliance with the statutory deadlines contained in 18 U.S.C. § 983."). This tendency jibes with the traditional rule that the law disfavors forfeitures; that courts strictly construe rules governing forfeitures; and that "strict compliance with the letter of the law by those seeking forfeiture must be required." *See, e.g.*, *United States v. Borromeo*, 945 F.2d 750, 752–53 (4th Cir. 1991).

All the same, "a court . . . **may** extend the period for filing a complaint for good cause shown or upon agreement of the parties." 18 U.S.C. § 983(a)(3)(A) (emphasis added). "The word 'may,' when used in a statute, usually implies some degree of discretion." *United States v.*

*Rodgers*, 461 U.S. 677, 706 (1983); *see also Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1341 (4th Cir. 1996) ("[W]e usually assume that Congress's use of 'may' instead of 'shall' indicates that the court has discretion to act."). This is especially the case where, as here, "the same [statute] uses both 'may' and 'shall.'"*Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (citation omitted). There is a paucity of authority, all of which is nonbinding, discussing the meaning of good cause under § 983(a)(3)(A). *See generally United States v. One Hundred Forty Thousand Dollars in U.S. Currency*, No. 06-CV-3247 (NG)(RLM), 2007 WL 2261650 (E.D.N.Y. Aug. 2, 2007); *Hammoud v. Woodard*, No. 05-74222, 2006 WL 381642 (E.D. Mich. Feb. 17, 2006); *United States v. $39,480.00 in U.S. Currency*, 190 F. Supp. 2d 929 (W.D. Tex. 2002); *Funds in the Amount of Three Hundred Fourteen Thousand Nine Hundred Dollars*, 2006 WL 794733. Two of these cases, *Hammoud* and *$39,480.00 in U.S. Currency*, arguably propose that "inadvertent errors by the government" that cause it to miss § 983(a)(3)(A)'s deadline by a short amount of time constitute good cause. *Cf. One Hundred Forty Thousand Dollars in U.S. Currency*, 2007 WL 2261650, at *8 (citations omitted). However, as a matter of federal common law, an attorney's failure to meet a filing deadline due to workload or inattention generally does not constitute good cause.[3] Granted, many of these and similar cases discuss the meaning of "good cause" under various provisions of the Federal Rules of Civil Procedure, such as Rule 16's provision that a scheduling order may be modified only for "good cause." *See* Fed. R. Civ. P. 16(b)(4). However, courts generally construe the relevant provisions of the Federal Rules of

---

[3] *See, e.g.*, *Cook v. Howard*, 484 F. App'x 805, 818 (4th Cir. 2012) ("'Good cause' would still require the Appellants to demonstrate, at bottom, that they had exercised diligence . . . but that they were nonetheless unable to comply with the [filing] deadline."); *Howard v. Valley Camp Coal Co.*, 94 F. App'x 170, 175 (4th Cir. 2004) ("As a matter of law, . . . inattentiveness . . . [is] insufficient to establish 'good cause' for failing to meet [a] deadline . . . ."); *E. Assoc. Coal Corp. v. Dir.*, *Office of Workers' Comp. Programs*, No. 98-1214, 1998 WL 957453, at *4 (4th Cir. 1998) (citations omitted) (per curiam) ("Heavy workload or inattention to office chores do[es] not constitute good cause."); *Essential Housing Mgmt., Inc. v. Walker*, No. 97-2150, 1998 WL 559349, at *5 (4th Cir. June 9, 1998) (stating that the failure to meet a deadline due to "heavy workload and personnel changes" does not constitute good cause).

Civil Procedure more liberally than forfeiture rules. *See United States v. Real Prop. Located at 3418 S. Marks Ave., Fresno, Fresno County Cal., APN: 328-111-06, Including All Appurtenances and Improvements Thereto*, No. 1:12–cv–00298–AWI–SMS, 2012 WL 5880436, at *3 (E.D. Cal. Nov. 21, 2012) (citing *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 322–24 (6th Cir. 2010)). Therefore, in general terms, if a justification does not constitute good cause under the relevant provisions of the Federal Rules of Civil Procedure, it likely does not constitute good cause under § 983(a)(3)(A).

In this case, the United States has not shown good cause for its failure to timely file its Complaint. The United States' essential argument is that it mistakenly believed that one of its runners would file the Complaint on July 11, 2013 because it finalized the Complaint and submitted it to support staff for filing on the same day. But, if the United States did not finalize the Complaint until the deadline of July 11, 2013, it should have made greater efforts to ensure that it was filed on that day. The United States seems to argue that it was reasonable for it to believe that the Complaint would be filed on July 11, 2013 because counsel for the United States followed standard office practice in preparing and submitting the Complaint for filing. However, the United States failed to support this assertion with affidavits or other evidence, and hence, it warrants no weight. *See* Fed. R. Civ. P. 56(c)(1)(A). Furthermore, this argument would not persuade the Court even had the United States properly supported it. Office personnel could deviate from standard practice for any number of foreseeable reasons. Therefore, when faced with mandatory deadlines, the requirement of due diligence may obligate attorneys to go beyond standard practice to ensure that they respect the deadlines. *Cf.* Model Rules Prof'l Cond. R. 1.3 (2011). This case boils down to basic inattentiveness on the part of the United States. If such inattentiveness does not constitute good cause to, for instance, extend a scheduling order, it

follows that it does not constitute good cause for failing to comply with a mandatory forfeiture deadline subject to strict construction.

The couple of district court decisions suggesting that inadvertent errors by the government constitute good cause under § 983(a)(3)(A) are unpersuasive. The primary case in this regard is *United States v. $39,480.00 in U.S. Currency*, 190 F. Supp. 2d 929 (W.D. Tex. 2002). In *$39,480.00*, the United States conceded that it filed its complaint for forfeiture one day late. The United States argued, in essence, that good cause existed because (1) the DEA forwarded it a copy of the claim bearing a date stamp of July 27, 2001 and (2) it filed its complaint within 90 days of this date. 190 F. Supp. 2d at 931. However, the United States later discovered an earlier copy of the original claim bearing a date stamp of July 26, 2011, which meant that its complaint was one day late. *Id.* The *$39,480.00* court agreed that good cause existed on these essential facts and gave three primary reasons for its decision. First, the court concluded that the United States acted diligently and in good faith in prosecuting its case because it relied on the incorrect date stamp of July 27, 2001 in filing the complaint one day late. *Id.* at 932. Second, the court concluded that the one-day delay in filing the complaint did not prejudice the claimants, whereas it would "have [the] draconian effect on the Government's case" of barring "it from any further action to effect civil forfeiture of that property." *Id.* at 933. Third, the court stated a preference for deciding cases on the merits. *Id.*

*$39,480.00* is inapposite. In this case, the United States did not rely on an third party's incorrect representation of the claim's filing date when filing the Complaint one day late. Quite the contrary, the Parties agreed to extend the deadline from March 13, 2013 to June 11, 2013. In short, the United States knew when it had to file the Complaint by. Furthermore, unlike in *$39,480.00*, the one-day delay prejudiced Claimants inasmuch as they had already agreed to

extend the deadline for 90 days. Therefore, the United States actually filed its Complaint roughly 181 days after the claim was filed. The United States would respond that 180 days would have come between the filing of the claim and the filing of the Complaint had it filed the Complaint on time, and that the difference between 181 days and 180 days is de minimis. The Court disagrees. A one-day delay is one day beyond the mandatory deadline that Congress imposed for the filing of forfeiture complaints. In mandating that the United States file forfeiture complaints within the specified amount of time, Congress effectively determined that the interest in apprising claimants of the alleged basis of the forfeiture and expeditiously processing forfeiture complaints outweighed the loss of dismissing *potentially* meritorious claims for untimely filing. This is hardly surprising considering that forfeiture is a harsh remedy that the law generally disfavors. Additionally, the Court finds no support for the *$39,480.00* court's statement that the general preference for merits adjudication factors into whether good cause exists under § 983(a)(3)(A). Taking this notion to its logical extreme would result in the untenable outcome that good cause would exist for every failure to comply with § 983(a)(3)(A); imposing the sanction of dismissal always prevents the court from deciding the claim on the merits. For good measure, even if *$39,480.00* were apposite factually, its legal conclusions would not bind this Court. *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n.7 (2011) (citation and internal quotation marks omitted) ("[A] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

      For these reasons, the United States has not shown good cause for its failure to file the Complaint within the time that § 983(a)(3)(A) prescribes.

**B.	Equitable Tolling**

The Court can summarily dispose of the argument that it should equitably toll § 983(a)(3)(A)'s deadline for a day. Although equitable tolling is a discretionary doctrine that is not amenable to hard-and-fast rules, it usually comes into play only where "(1) wrongful conduct by the opposing party prevented [the plaintiff] from timely asserting her claim; or (2) extraordinary circumstances beyond [the plaintiff's] control made it impossible for her to comply with the statutory time limit." *See Kuusk v. Holder*, 732 F.3d 302 (4th Cir. 2013) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). Here, there is no allegation or indication of wrongful conduct by Claimants. On the contrary, Claimants agreed to extend the deadline for filing the Complaint. Second, no extraordinary circumstances beyond the United States' control prevented it from filing the Complaint on time. Rather, the United States asserts that it mistakenly assumed that its office staff would file the Complaint by a certain time when it left the Complaint for them to file. It is well-settled, however, that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). For these reasons, the Court declines to equitably toll § 983(a)(3)(A)'s mandatory deadline.

**IV.	CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Claimants' Motion to Dismiss. A separate Order follows.

   November 15, 2013                                                        /s/
            Date                                                       Alexander Williams, Jr.
                                                                          United States District Judge